# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **SAUL WHITTAKER** | **CIVIL ACTION** |
| **VERSUS** | **NO. 06-3420** |
| **DOC SECRETARY, RICHARD L. STALDER** | **SECTION "M"(6)** |

## REPORT AND RECOMMENDATION

This matter was referred to the undersigned United States Magistrate Judge to conduct hearings, including an evidentiary hearing if necessary, and to submit proposed findings and recommendations for disposition pursuant to 28 U.S.C. §§ 636(b)(1)(B) and (C) and, as applicable, Rule 8(b) of the Rules Governing Section 2254 Cases. The Court has determined that a federal evidentiary hearing is unnecessary. *See* 28 U.S.C. § 2254(e)(2).[1] For the following reasons, it is recommended that the instant petition for habeas corpus relief be **DENIED** and **DISMISSED WITH PREJUDICE**.

---

[1]Under 28 U.S.C. § 2254(e)(2), whether to hold an evidentiary hearing is a statutorily mandated determination. Section 2254(e)(2) authorizes the district court to hold an evidentiary hearing only when the petitioner has shown either that the claim relies on a new, retroactive rule of constitutional law that was previously unavailable, 28 U.S.C. § 2254(e)(2)(A)(i), or the claim relies on a factual basis that could not have been previously discovered by exercise of due diligence, 28 U.S.C. § 2254(e)(2)(A)(ii); and the facts underlying the claim show by clear and convincing evidence that, but for the constitutional error, no reasonable jury would have convicted the petitioner. 28 U.S.C. § 2254(e)(2)(B).

I.    FACTUAL AND PROCEDURAL BACKGROUND

The petitioner, Saul Whittaker, is not presently incarcerated.[2]  On August 17, 2004,

the petitioner, Saul Whittaker, was charged by bill of information in Orleans Parish with

possession of crack cocaine.[3]  The Louisiana Fourth Circuit Court of Appeal summarized the

facts of the case, in relevant part, as follows:

> On August 3, 2004, two officers of the New Orleans Police Department
> (NOPD) observed the defendant stumble into traffic while trying to cross the
> street from the South Carrollton neutral ground.  Accordingly, the officers
> approached him to offer help.  As they neared him, however, he was swaying
> and a strong odor of alcohol emanated from him.  When questioned as to
> whether he needed assistance, the defendant's response was slurred.
> The defendant was arrested for public intoxication and advised of his
> rights.  Pursuant to the search incident to arrest, a crack pipe with residue was
> found in his right front pants pocket and a rock which the police officers
> believed was crack cocaine was found wrapped in a crumpled dollar bill inside
> his watch pocket.  Accordingly, the defendant was arrested and charged with
> possession of cocaine and possession of drug paraphernalia.
>                                    .  .  .
> At trial, both officers testified that Whittaker became enraged at his
> arrest, stating that they should be arresting drug sellers, not users and that he
> was a Tulane Law School student and he would have their jobs because he
> only smoked crack cocaine.  The parties stipulated that if Harry O'Neal of the
> NOPD crime lab testified, he would state that both crack pipe and the rock
> seized from Whittaker tested positive for cocaine.
> The defendant testified in his own defense, stating that he was fifty-one
> years old and prior to his arrest lived with his aunt at 2507 Palmyra Street near
> South Carrollton Avenue.  On the day of his arrest, he left his aunt's house at
> approximately 6 P.M. and walked to Gambino's Bakery on South Carrollton
> Avenue.  The defendant crossed South Carrollton and was in the Firestone
> parking lot when he saw the patrol car on Palm Street coming from the
> direction of the Hollygrove neighborhood. The officers pulled up to him in the
> parking lot and told him they wanted to search him for weapons.  After being

---

[2]*See* Rec. Doc. No. 13, p. 5 (new address indicated).

[3]St. Rec. Vol. 2 of 3, Bill of Information, 8/17/04.

searched, the defendant was handcuffed and arrested. He denied drinking any alcohol that day and insisted that he had crossed Carrollton long before the officers arrived. He explained that the officers stopped him because Tuesday and Thursdays were "jump-out day on people" by officers in African-American neighborhoods.

*State v. Whittaker*, 928 So.2d 770 (La. App. 4th Cir. 2006) (Table); State Record Supplemental Volume 1 of 1, pp. 1-2, Louisiana Fourth Circuit Opinion, 2005-KA-1198, May 10, 2006.

Whittaker was tried before a six-person jury on March 23, 2005, and was found guilty as charged.[4] The court sentenced Whittaker on May 23, 2005, to serve two years in prison with credit for time served.[5] The court also denied Whittaker's motion to reconsider the sentence and to quash a bill of information that was never filed.[6]

On direct appeal, Whittaker's appointed counsel argued that the sentence was excessive.[7] On May 10, 2006, the Louisiana Fourth Circuit affirmed the conviction and sentence finding no merit to the claim.[8] Whittaker's conviction became final 30 days later,

---

[4]St. Rec. Vol. 2 of 3, Trial Minutes (2 pages), 3/23/05; St. Rec. Vol. 3 of 3, Jury Verdict, 3/23/05; Trial Transcript, 3/23/05.

[5]St. Rec. Vol. 3 of 3, Sentencing Transcript, p. 1, 5/23/05.

[6]St. Rec. Vol. 3 of 3, Sentencing Transcript, pp. 1-2, 5/23/05; Motion for Reconsideration of Sentence, undated. *Id*., pp. 2-3.

[7]St. Rec. Vol. 3 of 3, Appeal Brief, 2005-KA-1198,11/28/05.

[8]*State v. Whittaker*, 928 So.2d at 770 (Table); St. Rec. Suppl. Vol. 1 of 1, p. 5, 4th Cir. Opinion, 2005-KA-1198, 5/10/06.

on June 9, 2006, because he did not seek review of his conviction in the Louisiana Supreme Court.[9]

Several days before this, on June 5, 2006, Whittaker filed a writ application with the Louisiana Fourth Circuit.[10] The court granted the writ for the sole purpose of transferring Whittaker's application for post-conviction relief to the trial court for consideration of the ineffective assistance of counsel claim raised therein.[11]

Whittaker filed another writ application with the Louisiana Fourth Circuit on August 14, 2006.[12] The court denied the application on August 28, 2006, because the trial court record showed that the court was attempting to comply with its order to address the claim.[13]

On October 27, 2006, Whittaker filed another writ application with the Louisiana Fourth Circuit related to his application for post-conviction relief.[14] While this was pending, on November 29, 2006, the state trial court issued a minute entry indicating that it had

---

[9]A state conviction is final for federal limitations purposes at the conclusion of the original period for seeking direct review. *Butler v. Cain*, 533 F.3d 314, 317 (5th Cir. 2008) (citing *Roberts v. Cockrell*, 319 F.3d 690, 694-95 (5th Cir. 2003)) (appeal is final when the state defendant does not timely proceed to the next available step in an appeal process)). Under La. S.Ct. R. X§5(a), petition had 30 days to postmark or file an application with the Louisiana Supreme Court seeking review of the judgment of the court of appeal. *See also*, La. Code Crim. Proc. art. 922(A). Whittaker did not do so.

[10]The record does not contain a copy of this writ application, No. 2006-K-0678. The filing date was obtained from the records of the clerk of court for the Louisiana Fourth Circuit.

[11]St. Rec. Vol. 3 of 3, 4th Cir. Order, 2006-K-0678, 6/20/06.

[12]The record does not contain a copy of this writ application, No. 2006-K-1071. The filing date was obtained from the records of the clerk of court for the Louisiana Fourth Circuit.

[13]St. Rec. Vol. 3 of 3, 4th Cir. Order, 2006-K-1071, 8/28/06.

[14]The record does not contain a copy of this writ application, No. 2006-K-1419. The filing date was obtained from the records of the clerk of court for the Louisiana Fourth Circuit.

reviewed its record and was unable to locate an application for post-conviction relief.[15]  On

December 4, 2006, the state trial court also wrote a letter to Whittaker informing him that his

application for post-conviction relief was not in the record and requesting that he forward a

copy to the court.[16]

Several days later, on December 14, 2006, Whittaker was released from prison after

completing his sentence.[17]  Thereafter, on December 18, 2006, the Louisiana Fourth Circuit

granted the pending writ  No. 2006-K-1419, in part, ordering the state trial court to comply

with its prior directives to consider Whittaker's application for post-conviction relief.[18]

On February 1, 2007, Whittaker filed another writ application with the Louisiana

Fourth Circuit seeking to obtain a ruling on his post-conviction application.[19]  The court

granted the writ for the sole purpose of transferring it to the state trial court for a ruling.[20]

---

[15]St. Rec. Suppl. Vol. 1 of 2, Minute Entry, 11/29/06.

[16]St. Rec. Suppl. Vol. 1 of 1, Letter from State Trial Court, 12/4/06.

[17]On or about March 25, 2008, after documents mailed to Whittaker were returned to the court as undeliverable, the Court inquired of the State as to whether Whittaker had been moved or released from prison.  The State, through Orleans Parish Assistant District Attorney Battle Bell,  advised the Court by telephone that Whittaker was released after completion of his sentence on December 14, 2006.  Whittaker also indicates in a subsequent federal pleading that he completed serving his sentence.  *See e.g.*, Rec. Doc. No. 13, p. 2.

[18]St. Rec. Suppl. Vol. 1 of 2, 4th Cir. Order, 2006-K-1419, 12/18/2006.

[19]The record does not contain a copy of this writ application, No. 2007-K-0142.  The filing date was obtained from the records of the clerk of court for the Louisiana Fourth Circuit.

[20]St. Rec. Suppl. Vol. 2 of 2, 4th Cir. Order, 2007-K-0142, 2/23/07.

Thereafter, the state trial court scheduled three hearings to consider Whittaker's application on March 14, 21, and 22, 2007.[21]  Whittaker did not appear at any of the hearings.[22]  At the last of these hearings, the state trial court reset the hearing for June 21, 2007.

In the meantime, on April 26, 2007, Whittaker filed another writ application with the Louisiana Fourth Circuit, which was denied because the trial court had set the hearing on the application for June 21, 2007.[23]  Whittaker, nevertheless, later failed to appear before the state trial court on June 21, 2007.[24]  At that time, the state trial court "closed" the case.[25]

Whittaker filed a writ application with the Louisiana Fourth Circuit on July 31, 2007, seeking review of the trial court's denial of relief on his claim of ineffective assistance of counsel based on counsel's failure to file a motion to suppress.[26]  The Louisiana Fourth Circuit denied relief stating the following:[27]

---

[21]St. Rec. Suppl. Vol. 2 of 2, Minute Entry, 3/14/07; Minute Entry, 3/21/07; Minute Entry, 3/22/07.

[22]*Id.*

[23]St. Rec. Suppl. Vol. 2 of 2, 4th Cir. Order, 2007-K-0523, 5/10/07.  The record does not contain a copy of this writ application, No. 2007-K-0523.  The filing date was obtained from the records of the clerk of court for the Louisiana Fourth Circuit.

[24]St. Rec. Suppl. Vol. 2 of 2, Minute Entry, 6/21/07.

[25]*Id.*

[26]A copy of this writ application, No. 2007-KH-0951, was obtained by the Court from the office of the clerk of the Louisiana Fourth Circuit.  It has been filed separately into the Court's record.

[27]A copy of the court's order dated August 17, 2007, was obtained by the Court from the office of the clerk of the Louisiana Fourth Circuit.  It has been filed separately into the Court's record.

If in fact the district court denied the Relator's claim regarding the suppression of the evidence, this Court finds no error in that ruling.

Thereafter, on October 8, 2007, Whittaker sought review of the ineffective assistance of counsel claim in the Louisiana Supreme Court.[28] On August 29, 2008, the court denied the application as moot, citing La. Code Crim. P. art. 924(2)[29] and *State ex rel. Becnel v. Blackburn*, 410 So.2d 1015 (La. 1982).[30]

II.    FEDERAL HABEAS PETITION

On June 29, 2006, Whittaker filed a petition for federal habeas corpus relief in this court raising three grounds for relief:[31] (1) ineffective assistance of counsel because counsel did not file a motion to suppress the cocaine seized during an unlawful stop; (2) the search and seizure was unconstitutional because there was no probable cause to stop him and because the officers advised him that they were only looking for weapons; and (3) the

---

[28]St. Rec. Suppl. Vol. 1 of 1, La. S. Ct. Letter, 2007-KH-1983, 10/8/07. A copy of this writ application, No. 2007-KH-1983, was obtained by the Court from the office of the clerk of the Louisiana Supreme Court. It has been filed separately into the Court's record.

[29]La. Code Crim. P. art. 924, in relevant part, provides as follows:
As used in this Title:
(1) An "application for post conviction relief" means a petition filed by a person in custody after sentence following conviction for the commission of an offense seeking to have the conviction and sentence set aside.
(2) "Custody" means detention or confinement, or probation or parole supervision, after sentence following conviction for the commission of an offense. ...

[30]*State ex rel. Whittaker v. State*, 989 So.2d 91 (La. 2008). A copy of the court's order dated August 29, 2008, was also obtained by the Court from the office of the clerk of the Louisiana Supreme Court. It has been filed separately into the Court's record. In *State ex rel. Becnel*, the Louisiana Supreme Court held that the completion of a sentence by one convicted of a crime would not render moot a subsequent attack on a constitutionally invalid conviction, if the conviction under attack is attended with collateral consequences, such as vulnerability to a multiple offender proceeding and a possible enhanced sentence. 410 So.2d at 1017.

[31]Rec. Doc. No. 1.

prosecution knowingly used perjured testimony from the officers which contradicted the affidavit of a defense witness.

The State filed a response in opposition to the petition, arguing that the petition should be dismissed because none of the claims raised had been exhausted through the state court system.[32] The State argued that, at the time, Whittaker had not pursued any relief in the Louisiana Supreme Court.[33]

III.  SUBJECT MATTER JURISDICTION

The record before the Court reflects that Whittaker is no longer incarcerated. To be eligible for federal habeas corpus relief, a petitioner must be "in custody." *Dickerson v. Louisiana*, 816 F.2d 220, 224 (5th Cir. 1987). Title 28 U.S.C. § 2241(d) "gives the United States district courts jurisdiction to entertain petitions for habeas relief <u>only</u> from persons who are 'in custody in violation of the Constitution or laws or treaties of the United States.'" *Maleng v. Cook*, 490 U.S. 488, 490 (1989) (quoting 28 U.S.C. § 2241(c)(3)) (emphasis added); 28 U.S.C. § 2254(a). Whether a petitioner is "in custody" is determined as of the date on which the habeas petition is filed. *Spencer v. Kemna*, 523 U.S. 1, 7 (1998); *Carafas v. LaVallee*, 391 U.S. 234, 238 (1968); *Port v. Heard*, 764 F.2d 423, 425 (5th Cir. 1985).

The record reflects that, at the time of the filing of this petition, Whittaker was still incarcerated and serving the sentence imposed for the conviction under attack. The custody requirement of the Court's jurisdiction attached at that time. However, Whittaker was

---

[32]Rec. Doc. No. 6.

[33]*Id.*; St. Rec. Vol. 1 of 3, Verification Letter, 9/15/06.

released after completion of his sentence on December 14, 2006. His release did not change this facet of the Court's jurisdiction. It is well settled that when the jurisdictional prerequisite of custody is met at the time of filing, jurisdiction is not defeated by the petitioner's subsequent release from custody. *Carafas*, 391 U.S. at 238; *Port*, 764 F . 2d at 425.

The question raised by his release is whether Whittaker's habeas corpus petition has been rendered moot because it no longer presents a case or controversy under Article III, § 2, of the Constitution. *Spencer*, 523 U.S. at 7-8. "'This case-or-controversy requirement subsists through all stages of federal judicial proceedings, trial and appellate. . . . The parties must continue to have a 'personal stake in the outcome' of the lawsuit.'" *Id.*, at 7 (quoting *Lewis v. Continental Bank Corp.*, 494 U.S. 472, 477-478 (1990)). This means that, throughout the litigation, the plaintiff "must have suffered, or be threatened with, an actual injury traceable to the defendant and likely to be redressed by a favorable judicial decision." *Lewis*, 494 U.S. at 477.

In the context of habeas corpus proceedings, once a convicted prisoner's sentence has expired, some concrete and continuing injury other than the now-ended incarceration or some "collateral consequence" of the conviction must exist if the case is to continue. *Spencer*, 523 U.S. at 7 (citing *Carafas*, 391 U.S. at 237-238); *Kaltenbach v. Whitley*, 82 F.3d 414, No. 95-31011, 1996 WL 166980 at *1 (5th Cir. Mar. 7, 1996) (Table, Text in Westlaw) (Louisiana inmate released from custody and restored citizenship and franchise rights rendering federal habeas moot). The Supreme Court has held that it is willing to presume that a wrongful criminal conviction has continuing collateral consequences even if they may be remote and unlikely to occur.

*Id.*, at 8 (citing *Sibron v. New York*, 392 U.S. 40, 55-56 (1968)); *see Missouri v. Hunter*, 459 U.S. 359, 372-73 (1983) ("each separate criminal conviction typically has collateral consequences. . ."). Furthermore, a petitioner challenging the validity of a conviction can often satisfy the case-or-controversy requirement of Article III by showing that the conviction affects his ability to vote, engage in certain businesses, serve as juror, or hold public office. *Carafas*, 391 U.S. at 237. However, the social stigma and the fact of a previous conviction alone are insufficient to maintain a live controversy under Article III. *Kaltenbach*, 1996 WL 166980 at *1.

In this case, Whittaker was released without any immediate restrictions, like parole, discernable from the record. Whittaker has not presented any in his pleadings. Thus, he has presented nothing which would establish a continued controversy before this Court. *See Id.*, at *1. Under federal law, however, it is possible that he remains subject to collateral restrictions applicable to a convicted felon, including the possibility that a multiple offender statute may be applied against him, especially in light of his habitual status discussed in the record of the instant conviction.[34] *See Baxter v. Estelle*, 614 F.2d 1030 (5th Cir. 1980) ("In particular, the threat of the use of the conviction for enhancement purposes in habitual offender statutes was profoundly real for a recidivist like Baxter.")

---

[34]The record demonstrates that the state trial court set Whittaker's sentencing for May 23, 2005, to allow the state to gather necessary documents to charge Whittaker as a multiple offender. *See*, St. Rec. Vol. 2 of 3, Trial Minutes, p. 2, 3/23/05; St. Rec. Vol. 3 of 3, Trial Transcript, pp. 3, 6, 8, 29-30, 3/23/05. This did not come to pass. St. Rec. Vol. 3 of 3, Sentencing Transcript, p. 2-3, 5/23/05.

Applying the federal standards set forth above, and considering the record presented, the Court can not find that Whittaker's federal petition is necessarily and certainly moot. Out of an abundance of caution, the Court therefore will proceed with its review.

IV.    GENERAL STANDARDS OF REVIEW

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214, comprehensively revised federal habeas corpus legislation, including 28 U.S.C. § 2254. The AEDPA went into effect on April 24, 1996[35] and applies to habeas petitions filed after that date. *Flanagan v. Johnson*, 154 F.3d 196, 198 (5th Cir. 1998) (citing *Lindh v. Murphy*, 521 U.S. 320 (1997)). The AEDPA therefore applies to this petition, which, for reasons discussed below, is deemed filed in this federal court on May 30, 2006.[36]

The threshold questions in habeas review under the amended statute are whether the petition is timely and whether the claims raised by the petitioner were adjudicated on the merits in state court; *i.e.*, the petitioner must have exhausted state court remedies and must

---

[35]The AEDPA, which was signed into law on that date, does not specify an effective date for its non-capital habeas corpus amendments. Absent legislative intent to the contrary, statutes become effective at the moment they are signed into law. *United States v. Sherrod*, 964 F.2d 1501, 1505 (5th Cir. 1992).

[36]The Fifth Circuit has recognized that a "mailbox rule" applies to pleadings, including habeas corpus petitions filed after the effective date of the AEDPA, submitted to federal courts by prisoners acting pro se. Under this rule, the date when prison officials receive the pleading from the inmate for delivery to the court is considered the time of filing for limitations purposes. *Coleman v. Johnson*, 184 F.3d 398, 401 (5th Cir. 1999), *cert. denied*, 529 U.S. 1057 (2000); *Spotville v. Cain*, 149 F.3d 374, 378 (5th Cir. 1998); *Cooper v. Brookshire*, 70 F.3d 377, 379 (5th Cir. 1995). Whittaker's petition was filed by the clerk of court on June 29, 2006, when the filing fee was paid. Whittaker signed the original petition on May 30, 2006. This is the earliest date on which he could have delivered the pleadings to prison officials for mailing. The fact that he paid the filing fee on a later date does not alter the application of the federal mailbox rule to his pro se petition. *See Cousin v. Lensing*, 310 F.3d 843 (5th Cir. 2002) (mailbox rule applies even if inmate did not pay the filing fee at the time of mailing) (citing *Spotville*, 149 F.3d at 374).

not be in "procedural default" on a claim. *Nobles v. Johnson*, 127 F.3d 409, 419-20 (5th Cir. 1997) (citing 28 U.S.C. § 2254(b), (c)). As noted above, the State has raised the defense that Whittaker failed to exhaust state court remedies prior to filing the petition.

On November 13, 2008, Whittaker moved the Court to amend his petition to exclude his third claim, regarding the prosecution's knowing use of perjured testimony, and to include a new claim, that the state courts denied him due process and a fair hearing on his illegal search and seizure claim.[37] In a supplement to the motion, Whittaker requested that the Court allow him to withdraw all of his unexhausted claims, which he did not delineate, and to include for consideration the claim that the state courts denied him due process and a fair hearing by the state courts on his illegal search and seizure claims.[38]

In addressing that motion, the Court reviewed Whittaker's claims and determined that he did not exhaust his second or third claims in the original petition, which addressed the unconstitutional search and seizure and the prosecution's use of perjured testimony. He was allowed to withdraw those claims by separate order of the Court. However, well after the filing of his petition in this Court, Whittaker eventually exhausted state court remedies as to his ineffective assistance of counsel. That is, after the trial court "closed" his case, he continued pursue the ineffective assistance of counsel claims in writ applications filed in the Louisiana Fourth Circuit and the Louisiana Supreme Court.

---

[37]Rec. Doc. No. 16.

[38]Rec. Doc. No. 17.

However, the underlying requirements of federal habeas corpus relief hold as a prerequisite that a petition exhaust his remedies in the state courts as to all claims prior to requesting federal relief. *Whitehead v. Johnson*, 157 F.3d 384, 387 (5th Cir. 1998) (citing *Rose v. Lundy*, 455 U.S. 509, 519-20 (1982)); *accord Preiser v. Rodriguez*, 411 U.S. 475, 500 (1973); *Nobles*, 127 F.3d at 419. Whittaker did not meet this fundamental prerequisite before filing in this Court. He did so after his case was pending before this federal court. Nevertheless, his failure to do so is of no moment. The Court is allowed to consider the claim since relief is not warranted. 28 U.S.C. § 2254(b)(2).

The record reflects that when Whittaker eventually presented this claim to the Louisiana Supreme Court, relief on the claim was denied on procedural grounds which prevent federal review of his claim. The United States Fifth Circuit Court of Appeals has stressed that a federal habeas court must determine as a threshold matter whether procedural default has occurred on any asserted claim. *Nobles*, 127 F.3d at 420. This court has discretion to raise procedural default sua sponte, provided that the petitioner has notice that the issue is being considered. *Fisher v. State*, 169 F.3d 295, 301 (5th Cir. 1999); *Magouirk v. Phillips*, 144 F.3d 348, 358 (5th Cir. 1998).

The record reflects that the State's failure to raise this defense was not intentional but instead the result of its inadvertence and failure to update it response as Whittaker continued to pursue state relief while this federal petition was pending. *See Prieto v. Quaterman*, 456 F.3d 511 (5th Cir. 2006) (*citing Magouirk*, 144 F.3d at 360). Accordingly, **petitioner is hereby specifically instructed that this report and recommendation is notice to him that**

**this court is sua sponte raising the issue of procedural default and that petitioner must**
**submit any evidence or argument concerning the default as part of any objections he**
**may file to this report**. *Magouirk*, 144 F.3d at 348.

V.     PROCEDURAL DEFAULT

Generally, a federal court will not review a question of federal law decided by a state court if the decision of that state court rests on a state law ground that is both independent of the federal claim and adequate to support that judgment. *Coleman v. Thompson*, 501 U.S. 722, 731-32 (1991); *Glover v. Cain*, 128 F.3d 900, 902 (5th Cir. 1997); *Amos v. Scott*, 61 F.3d 333, 338 (5th Cir. 1995) (citing *Harris v. Reed*, 489 U.S. 255, 260, 262 (1989)).  This "independent and adequate state law" doctrine applies to both substantive and procedural grounds and affects federal review of claims that are raised on either direct or habeas review. *Amos*, 61 F.3d at 338.

Procedural default does not bar federal court review of a federal claim raised in a habeas petition unless the last state court to render a judgment in the case has clearly and expressly indicated that its judgment is independent of federal law and rests on a state procedural bar. *Harris*, 489 U.S. at 263; *Glover*, 128 F.3d at 902.  When the last state court judgment does not indicate whether it is based on procedural default or the merits of a federal claim, it is presumed that the court relied upon the same grounds as the last reasoned state court opinion.  *Ylst v. Nunnemaker*, 501 U.S. 797, 802 (1991).

In this case, Whittaker raised his ineffective assistance of counsel claim in a writ application to the Louisiana Fourth Circuit in No. 2006-K-0678, which was transferred to the

state trial court for a ruling.[39]  After the long history of filings and transfers outlined in this report, the state trial court eventually "closed" the case when Whittaker failed to appear at the hearings set in March and June, 2007.  Unsure as to whether the trial court actually denied relief on the claim, the Louisiana Fourth Circuit did so in its order issued in No. 2007-K-0951, on August 17, 2007.[40]  Whittaker raised the issue again in the writ application that followed in the Louisiana Supreme Court.[41]  That court denied the application as moot, citing La. Code Crim. P. art. 924(2) and *State ex rel. Becnel v. Blackburn*, 410 So.2d 1015 (La. 1982).[42]  This procedural denial was the last reasoned decision on the issue.  *Ylst*.

A.    INDEPENDENT AND ADEQUATE

The Louisiana Supreme Court denied relief on Whittaker's ineffective assistance of counsel because his petition was moot.  Under La. Code Crim. P. 924(1), an application for post conviction relief is defined as "a petition filed by a person in <u>custody</u> after sentence following conviction for the commission of an offense seeking to have the conviction and sentence set aside."  (emphasis added).  Louisiana also defines custody as "detention or

---

[39]St. Rec. Vol. 3 of 3, 4th Cir. Order, 2006-K-0678, 6/20/06.

[40]A copy of the court's order dated August 17, 2007, was obtained by the Court from the office of the clerk of the Louisiana Fourth Circuit.  It has been filed separately into the Court's record.

[41]A copy of this writ application, No. 2007-KH-1983, was obtained by the Court from the office of the clerk of the Louisiana Supreme Court.  It has been filed separately into the Court's record.

[42]*State ex rel. Whittaker v. State*, 989 So.2d 91 (La. 2008).  A copy of the court's order dated August 29, 2008, was also obtained by the Court from the office of the clerk of the Louisiana Supreme Court.  It has been filed separately into the Court's record.  In *State ex rel. Becnel*, the Louisiana Supreme Court held that the completion of a sentence by one convicted of a crime will render moot a subsequent attack on a constitutionally invalid conviction, unless the conviction under attack is attended with collateral consequences, such as vulnerability to a multiple offender proceeding and a possible enhanced sentence.  410 So.2d at 1017.

confinement, or probation or parole supervision, after sentence following conviction for the commission of an offense." La. Code Crim. P. art. 924(2). The Louisiana Supreme Court, in *State ex rel. Becnel*, the Louisiana Supreme Court, in considering the definition of custody under La. Code Crim. P. 924(2), held that the completion of a sentence by one convicted of a crime did not moot the attack on a constitutionally invalid conviction, if the conviction under attack was attended with collateral consequences, such as vulnerability to a multiple offender proceeding and a possible enhanced sentence. *State ex rel. Becnel*, 410 So.2d at 1017. The implication there is that the application is moot if the conviction carried no other collateral consequences. The Louisiana Supreme Court used these considerations to deny Whittaker's writ application as moot.

For the state-imposed procedural bar to prevent review by this federal habeas court, the bar must be independent and adequate. A procedural restriction is "independent" if the state court's judgment "clearly and expressly" indicates that it is independent of federal law and rests solely on a state procedural bar. *Amos*, 61 F.3d at 338. To be "adequate," the state procedural rule must be strictly or regularly followed and evenhandedly applied to the majority of similar cases. *Glover*, 128 F.3d at 902. The state procedural bar is presumptively adequate when the state court expressly relies on it in deciding not to review a claim for collateral relief. *Glover*, 128 F.3d at 902. Further, "the burden is on the habeas petitioner to demonstrate otherwise." *Hughes v. Johnson*, 191 F.3d 607, 614 (5th Cir. 1999). To establish that a state procedural rule is not "adequate," a petitioner bears the burden of

showing that the state did not strictly or regularly follow the procedural rule. *Stokes v. Anderson*, 123 F.3d 858, 860 (5th Cir. 1997). Whittaker did not meet this burden.

La. Code Crim. P. art. 924(2) and the Louisiana Supreme Court decision in *Becnel* are clearly independent state law procedural bases for denying review of writ received from someone like Whittaker, who according to the record was not incarcerated when the writ application was filed with the Louisiana Supreme Court. Under Louisiana law, based on the custody definition in La. Code Crim. P. art. 924(2), "once the sentence is satisfied, postconviction relief is barred." *State v. Smith*, 700 So.2d 493, 495 (La. 1997); *see also*, *Turner v. James*, 840 So.2d 662 (La. App. 2d Cir. 2003).

The Louisiana courts have strictly and consistently relied on this provision to deny petitions filed by those no longer in custody. *See e.g.*, *Turner*, 840 So.2d at 662; *State v. Tran*, 793 So.2d 172 (La. 2001) (finding petitioner did not meet custody requirement citing La. Code Crim. P. art. 924 and *Smith*, 700 So.2d at 495-96) *State v. Harris*, 649 So.2d 378 (La. 1995) ("Not considered. Relator is not in custody. La. Code Crim. P. art 924); *State ex rel. Lay v. State*, 617 So.2d 923 (La. 1993) ("Not considered. The records indicate relator's inability to satisfy the 'custody' requirement of La. C. Cr. P. art. 924 , and relator has failed to sufficiently establish that he meets this requirement so as to warrant this Court's consideration of his claim."); *State v. Cruz*, 584 So.2d 1150 (La. 1991) ("Not considered. Relator is not in custody for purposes of LSA C. Cr. P. arts. 924 et seq."); *State ex rel. Tauzier v. Orleans Criminal Dist. Court, Parish of Orleans*, 575 So.2d 819 (La. 1991) ("Not considered. The records indicate relator's inability to satisfy the 'custody' requirement of La.

C. Cr. P. art. 924 , and relator has failed to sufficiently establish that he meets this requirement so as to warrant this Court's consideration of his claim."); *State v. Guillot*, 573 So.2d 1116 (La. 1991) (same); *State v. Guillot*, 569 So.2d 974 (La. 1990) (same); *State v. White*, 569 So.2d 974 (La. 1990) (same).

The Court finds that the bar imposed by the Louisiana Supreme Court was both independent and adequate to bar federal review of Whittaker's ineffective assistance of counsel claim in this court.

### B.    CAUSE AND PREJUDICE

A federal habeas petitioner may be excepted from the procedural default rule only if he can show "cause" for his default and "prejudice attributed thereto," or demonstrate that the federal court's failure to review the defaulted claim will result in a "fundamental miscarriage of justice." *Glover*, 128 F.3d at 902 (citing *Coleman*, 501 U.S. at 731-32); *Amos*, 61 F.3d at 338-39 (citing *Harris*, 489 U.S. at 262; *Engle v. Isaac*, 456 U.S. 107, 129 (1982)).

To establish cause for a procedural default, a petitioner must demonstrate that some objective factor external to the defense impeded his efforts to comply with the state's procedural rule. *Murray v. Carrier*, 477 U.S. 478, 488 (1986). The mere fact that petitioner or his counsel failed to recognize the factual or legal basis for a claim, or failed to raise the claim despite recognizing it, does not constitute cause for a procedural default. *Id*. at 486.

In this case, the petitioner has not offered any cause for the default which would excuse the procedural bar imposed by the Louisiana courts. The Court's review of the record does not support a finding that any factor external to the defense prevented the petitioner

from raising this claim in a procedurally proper manner. The record also does not reflect any action or inaction on the part of the State which prevented him from doing so.

"The failure to show 'cause' is fatal to the invocation of the 'cause and prejudice' exception, without regard to whether 'prejudice' is shown." *Hogue*, 131 F.3d 466, 497 (5th Cir. 1997) (citing *Engle*, 456 U.S. at 134 n.43). Having failed to show an objective cause for his default, the court need not determine whether prejudice existed, and the petitioner has not alleged any actual prejudice. *Ratcliff v. Estelle*, 597 F.2d 474 (5th Cir. 1979) (citing *Lumpkin v. Ricketts*, 551 F.2d 680, 681-82 (5th Cir. 1977)).

Whittaker's claim of ineffective assistance of counsel is therefore procedurally barred from review by this federal habeas corpus court. *See Trest v. Whitley*, 94 F.3d 1005, 1008 (5th Cir. 1996) (habeas review precluded when petitioner neglected to allege actual prejudice and cause of failure to comply with state procedural rule concerning time restriction on filing for state post-conviction relief), *vacated on other grounds*, 522 U.S. 87 (1998).[43]

## C.  FUNDAMENTAL MISCARRIAGE OF JUSTICE

Whittaker may avoid this procedural bar only if a fundamental miscarriage of justice will occur if the merits of his claim are not reviewed. *Hogue*, 131 F.3d at 497 (citing *Sawyer v. Whitley*, 505 U.S. 333, 339 (1992)). To establish a fundamental miscarriage of justice, petitioner must provide this court with evidence that would support a "colorable showing of factual innocence." *Kuhlmann v. Wilson*, 477 U.S. 436, 454 (1986); *accord Murray*, 477

---

[43]The Supreme Court vacated the Fifth Circuit's opinion on grounds that a court of appeals is not required to raise the procedural default argument sua sponte. *Id.*

U.S. at 496; *Glover*, 128 F.3d at 902. To satisfy the factual innocence standard, petitioner must establish a fair probability that, considering all of the evidence now available, the trier of fact would have entertained a reasonable doubt as to the defendant's guilt. *Campos v. Johnson*, 958 F. Supp. 1180, 1195 (W.D. Tx. 1997) (footnote omitted); *Nobles*, 127 F.3d at 423 n. 33 (actual innocence factor requires a showing by clear and convincing evidence that "but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.") When the petitioner has not adequately asserted his actual innocence, his procedural default cannot be excused under the "fundamental miscarriage of justice" exception. *Glover*, 128 F.3d at 903.

Whittaker does not present anything, and the record contains nothing, that suggests his actual innocence. His claims address alleged errors in the underlying criminal proceedings and not his actual innocence. He presents no new evidence or argument of innocence that was not already presented to and resolved by the jury and the state trial court. For these reasons, Whittaker has failed to overcome the procedural bar to this claim. The ineffective assistance of counsel claim is therefore procedurally barred and must be dismissed with prejudice for that reason.

## RECOMMENDATION

For all of the foregoing reasons, it is **RECOMMENDED** that the petition of Saul Whittaker for issuance of a writ of habeas corpus under 28 U.S.C. § 2254 be **DENIED** and **DISMISSED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendations in a magistrate judge's report and recommendation within ten (10) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. *Douglass v. United Servs. Auto Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).

New Orleans, Louisiana, this ____4th____ day of February, 2009.

<br>

_____
LOUIS MOORE, JR.
UNITED STATES MAGISTRATE JUDGE